UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRIAN THOMAS MERRILL,

    Petitioner,

v.                                                              CASE NO. 6:06-cv-1958-Orl-31DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner filed an amended petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 7). Upon consideration of the amended petition, the Court ordered Respondents to show cause why the relief sought in the amended petition should not be granted. Thereafter, Respondents filed a response to the amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 11). Petitioner filed a reply to the response (Doc. No. 15).

Petitioner alleges four claims for relief in his habeas petition: (1) the State failed to present sufficient evidence to establish that he was guilty of carjacking (claim one); (2) the identification by the victim was "tainted" (claim two); (3) his trial counsel rendered

ineffective assistance (claim three); and (4) he was not advised of his *Miranda*[1] rights prior to interrogation by law enforcement (claim four).

I.      *Procedural History*

On August 18, 2003, Petitioner was charged by information with carjacking. (App. I.) After a jury trial, Petitioner was found guilty as charged. (Apps. II, III.) The state trial court sentenced Petitioner to a thirty-year term of imprisonment on August 12, 2004. (App. IV.)

Petitioner appealed to the Fifth District Court of Appeal of Florida. (App. V.) While his direct appeal was pending, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (App. X.) The state trial court denied the motion (App. XI) on the same day the state appellate court *per curiam* affirmed Petitioner's conviction and sentence. (App. VIII); *Merrill v. State*, 902 So. 2d 817 (Fla. 5th DCA 2005).

Petitioner filed a second Rule 3.850 motion for post-conviction relief, (App. XII), which the state trial court denied as successive (App. XIII). Petitioner appealed, and the appellate court vacated the trial court's order and held that the trial court lacked jurisdiction to rule on either of Petitioner's Rule 3.850 motions because his direct appeal was pending at the time. (App. XV); *Merrill v. State*, 909 So. 2d 519 (Fla. 5th DCA 2005).

The state trial court issued its order after remand vacating its previous orders and again denying both of Petitioner's Rule 3.850 motions. (App. XVII.) Petitioner appealed,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966)

and the appellate court *per curiam* affirmed. (App. XVIII); *Merrill v. State*, 918 So. 2d 310 (Fla. 5th DCA 2005).

Petitioner filed two additional Rule 3.850 motions (Apps. XX, XXII), which were dismissed as unsworn and facially insufficient (Apps. XXI, XXIII). Petitioner filed a fifth Rule 3.850 motion whereby he challenged the sufficiency of the evidence used to convict him. (App. XXIV.) The state trial court denied relief because the claim should have been raised on direct appeal and found Petitioner's motion to be an abuse of the Rule 3.850 procedure. (App. XXV.) Petitioner appealed, and the appellate court *per curiam* affirmed. (App. XXVI); *Merrill v. State*, 939 So. 2d 114 (Fla. 5th DCA 2006).

## II.     *Governing Legal Principles*

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state court decisions must be given the benefit of the doubt).

### A.     *Exhaustion and Procedural Default*

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or
>
>         (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but that would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a

4

procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeny v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The Court further explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice. To establish cause, "a petitioner must demonstrate that some objective factor external to the defense impeded [his] effort to raise

the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the claim been presented. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice" exception, occurs only in the extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). "'To be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense in light of the new evidence. *Schlup*, 513 U.S. at 327.

### B.   *Standard of Review Under the AEDPA*

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the United States Supreme Court precedent "in existence at the time the conviction became final").

"[S]ection 2254(d)(1) provides two separate basis for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent consideration a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall

have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

    *C.*    *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id*. at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad

---

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> discretion to represent their client by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumption, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.  Discussion

### A.  *Claim One*

Petitioner asserts that the State failed to present sufficient evidence to prove he was guilty of carjacking. This issue was raised on direct appeal and in Petitioner's Rule 3.850 proceedings.[3] In denying relief on Petitioner's first two Rule 3.850 motions, the state trial

---

[3] Although Petitioner raised this claim in the state courts, he failed to allege the violation of a federal constitutional right. Accordingly, the instant claim appears to be procedurally barred in this Court. *See Pearson v. Sec'y for the Dep't of Corr.*, No. 07-12828, 2008 U.S. App. LEXIS 8559, at *8 (11th Cir. Apr. 15, 2008) (when a petitioner presents a sufficiency of the evidence claim in state court and cites exclusively to state cases and all substantive arguments address state law, there is nothing in the argument to alert the state court to the presence of a federal claim about due process and the federal claim is, therefore, unexhausted).

However, pursuant to *Thompson v. Wainwright*, 714 F.2d 1495 (11th Cir. 1983), the Court gave Respondents the opportunity to notify the Court as to whether or not they wished to waive the exhaustion defense. (Doc. No. 9.) In its response, Respondents did not assert that the instant claim was unexhausted and procedurally barred but instead maintained that it should be denied pursuant to § 2254(d). (Doc. No. 11 at 7.) If Respondents do not categorically state in the answer their position regarding exhaustion, the defense of non-exhaustion is waived. *Thompson*, 714 F.2d at 1502 n.5; *McGee v. Estelle*, 722 F.2d 1206, 1215 (5th Cir. 1984). Thus, the Court construes Respondents silence on the procedural bar as a waiver of the exhaustion requirement. *See Atkins v. Attorney Gen. of Ala.*, 932 F.2d 1430, 1431 (11th Cir. 1991) ("When the State has not raised lack of exhaustion

court found Petitioner's assertion that the evidence was insufficient to be "utterly without merit." (App. XVII at 3.)

Florida courts evaluate a sufficiency of the evidence claim under a legal standard identical to the standard used by federal courts in deciding federal due process challenges to the sufficiency of the evidence. In evaluating such a claim, Florida courts assess whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt. *Simmons v. State*, 934 So. 2d 1100, 1111 (Fla. 2006); *Lynch v. State*, 293 So. 2d 44 (Fla. 1974). This standard is the same as the federal standard for evaluating a due process challenge based on the sufficiency of the evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original).

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute a crime." *In re Winship*, 397 U.S. 358, 364 (1970). In a challenge to a state criminal conviction brought pursuant to § 2254, a petitioner is entitled to habeas relief on a claim on insufficient evidence "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*,

---

in the district court or on appeal, ordinarily that constitutes an implied waiver of the exhaustion requirement."). Therefore, the merits of this claim are properly before the Court.

443 U.S. at 324. "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Id.* at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in original).

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Id.* at 324 n.16. "Although each element of the offense must be established beyond a reasonable doubt, the State is not required to rule out every hypothesis except that of the guilt of the defendant." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001) (internal citation omitted). If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id*. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Id*. (citing *Jackson*, 443 U.S. at 326).

Here, to prove the crime of carjacking as charged in the Information, the State had to prove beyond a reasonable doubt that (1) Petitioner took the vehicle from the person or custody of the victim; (2) force, violence, assault, or putting in fear was used in the course of the taking; and (3) the taking was with the intent to temporarily or permanently deprive the victim of his right to the vehicle. *See* Fla. Std. Jury Inst. 15.2.

At trial, the evidence established that the carjacking occurred at a used car lot around 6:00 p.m. on June 16, 2003. Two witnesses identified Petitioner as the person who stole the vehicle, a 2001 Chevrolet Tahoe. The owner of the vehicle, Charles Priest, testified that he saw a man wearing a baseball cap and a big, blue shirt similar to a Wal-Mart smock

approach Tony Beckham, the owner of the used car dealership. (App. II at 32-33.) Priest testified that the man looked "disheveled." *Id*. at 33. After speaking to Beckham, Priest said the man walked back and forth on the sidewalk across from the dealership and then across U.S. 1. *Id*. at 34.

When Priest was ready to leave the dealership, he put his cell phone, wallet, and keys in his Tahoe but realized he forgot something inside. *Id*. at 36. He testified that he was away from his car for a short period of time when he heard the engine to his car start. *Id*. at 36-37. He stated that he ran to the car, started beating on the rear window and yelling at the person in the car to get out. *Id*. at 37-38. He said that the car moved backward a short distance, stopped, then accelerated knocking him into another car. *Id*. at 38-39.

Both Priest and Beckham testified that they recognized the man inside the car as the man who had approached Beckham earlier. Specifically, they stated that they recognized the tattoos, blue shirt, and baseball cap. *Id*. at 40-41, 65.

Priest called his wife who then called her brother, Gerald Skinner, an officer with the Daytona Police Department. *Id*. at 42-43. Skinner testified that he called Priest's cell number and a man answered the phone. *Id*. at 71. The man said that he had to get to Miami and that he would return the car the next day. *Id*.

Skinner further testified that later that same night, he was traveling to work shortly before 10:00 p.m. when he saw Priest's car crashed by the side of the road in Palm Coast. *Id*. at 72. He called Priest to inform him about his car and assisted the deputies that were already on scene. *Id*. Skinner stated that Air One was circling the area because someone

related to the crash was believed to be in the surrounding woods. *Id*. at 73. Skinner then saw two deputies come out of the woods with Petitioner in custody. *Id*. He testified that he overheard Petitioner say something about a female who had picked him up earlier and was still in the woods. *Id*. at 74. Skinner stated that he recognized Petitioner's voice as the man's voice who had answered Priest's cell phone earlier that day. *Id*. Skinner testified that he watched as deputies removed Priest's wallet from Petitioner's pocket. *Id*. at 75.

Deputy Calvin Grant of the Flagler County Sheriff's Department testified that an air and canine search resulted in Petitioner's apprehension. *Id*. at 95-97. He stated that he watched while Petitioner was searched for weapons and saw an officer remove a wallet from Petitioner's pocket. *Id*. at 97. The wallet was then turned over to Priest, and he overheard Priest identify Petitioner as the man who stole his vehicle at the car dealership. *Id*. at 98. He said that Petitioner mentioned something about a female taking the vehicle and that she was still hiding in the woods. *Id*. at 100-101.

Deputy Grant further testified that deputies recovered two items of clothing in the woods near Petitioner or near the scene of the accident. *Id*. at 102. The items were entered into evidence, *id*. at 103, and Priest testified that he recognized the two items as the hat and the blue shirt the carjacker was wearing at the time his vehicle was stolen. *Id*. at 108.

Petitioner's boss testified that Petitioner was working for him at the time of the incident. *Id*. at 86. He stated that Petitioner did not show up for work on June 17, but returned to work on June 18. *Id*. Petitioner told him that he had borrowed someone's truck, fallen asleep at the wheel, and wrecked. *Id*. at 88.

13

Petitioner took the stand and denied stealing Priest's vehicle. He testified that he was eating at a KFC during the time the car was stolen and later went to Palm Coast to look at a lot he was considering purchasing. *Id.* at 126-30. He stated that he was in the woods when he heard a crash and some voices yelling. *Id.* at 130-31. He testified that he was making his way toward the road to see what was going on when he saw a helicopter flying overhead. *Id.* at 131-32. According to Petitioner, an officer jumped on him and then forced him to the ground. *Id.* at 133. Petitioner denied having Priest's wallet and claimed that the wallet in his pocket was his own wallet. *Id.* at 136-37. He also denied making any statements about a female, denied seeing Priest at the scene, and denied ever riding in a Tahoe. *Id.* at 139-40. He further denied making any statements to his boss about a wreck and testified that law enforcement officers "planted" Priest's wallet on him. *Id.* at 145-46.

Upon review of the record, the Court concludes that the evidence presented was more than sufficient to sustain the conclusion that Petitioner was guilty of the charged offense under the applicable standard of proof. Accordingly, when viewed in a light most favorable to the State and resolving all conflicts in favor of the prosecution, Petitioner has failed to show a due process violation based on insufficient evidence. Therefore, he is not entitled to habeas relief on this claim.

### B.     *Claim Two*

Petitioner alleges that the victim's identification of him as the perpetrator was "tainted." (Doc. No. 7 at 6.) Petitioner raised this claim as one of ineffective assistance of counsel in his Rule 3.850 proceedings. *See* Apps. X, XII. In denying relief, the trial court

stated that there was no evidence to support Petitioner's claim of tainted identification, therefore defense counsel was not ineffective for failing to object to the witness' identification of Petitioner as the perpetrator. (App. XVII at 3.)

Petitioner claims that the victim's initial description of the carjacker did not match Petitioner's identity and the victim was allowed to amend his description only after seeing Petitioner at the scene of the crash later that night. (Doc. No. 7 at 6.) In support of this claim, Petitioner provided the Court with a copy of the incident report prepared by law enforcement officials immediately following the carjacking. (Doc. No. 2 at 4.) He asserts that the report fails to mention anything about the victim describing the carjacker as having tattoos and wearing a baseball cap and cut off shorts. (Doc. No. 7 at 6.)

Petitioner's allegations do not demonstrate that the victim's identification in this case was improper. In the incident report, police documented that the victim described the carjacker as a white male, wearing a blue vest style shirt. As noted above, at trial two witnesses identified Petitioner as the carjacker not only by his tattoos but also by the blue shirt he was wearing at the time of the offense. Priest described the clothing that the carjacker was wearing, and the clothing described was found on the ground close to where Petitioner was apprehended. Additionally, Priest's wallet was found in Petitioner's pocket.

Petitioner has not demonstrated by clear and convincing evidence that the state court's factual determination was incorrect. Furthermore, Petitioner has not established that the state court findings regarding trial counsel's effectiveness were either contrary to,

15

or an unreasonable application of, clearly established federal law. Accordingly, this claim is denied pursuant to § 2254(d).

### C. *Claim Three*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to produce exculpatory evidence, effectively cross-examine the State's witnesses, and object to the State's misuse of evidence. (Doc. No. 7 at 8.) Additionally, Petitioner asserts that trial counsel was ineffective by alluding to Petitioner's guilt during closing argument. *Id*.

In Petitioner's Rule 3.850 proceedings, he argued that his trial counsel was ineffective because he was not prepared for trial. (App. XII.) In denying relief, the state trial court determined that Petitioner "failed to allege specific acts or omissions by trial counsel that caused the jury to convict [him]." (App. XVII.)

Petitioner presented these specific allegations of ineffective assistance in his fourth Rule 3.850 motion, and the state trial court found the claims to be improperly successive as well as procedurally barred. (App. XXIII.) As such, had Respondents asserted that the claims of ineffective assistance were procedurally barred from review, this Court would have found that the claims were procedurally barred because the state court held such. However, like claim one, Respondents failed to raise this argument. Thus, the Court must consider the merits of Petitioner's allegations.

Upon review of the petition, the Court concludes that Petitioner's allegations are conclusory with no support and are inadequate as a matter of law to raise cognizable claims of ineffective assistance of counsel. *See United States v. Cranshaw*, 817 F. Supp. 723,

16

728 (N.D. Ill. 1993). Petitioner "must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *See United States v. Moya-Gomez*, 860 F.2d 706, 764 (7th Cir. 1988). Moreover, he must provide evidence, not mere conclusory allegations that counsel overlooked exculpatory information. *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991); *cf. Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

In the present case, Petitioner has not stated what exculpatory evidence trial counsel failed to present or how it would have impacted the outcome of his trial. Additionally, Petitioner fails to assert what statements counsel made during closing arguments that alluded to his guilt or what evidence the State misused in order to obtain a conviction. Petitioner's bald assertions are simply inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D. N.Y. 1995); *see Strickland*, 466 U.S. at 689 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Accordingly, this claim is denied.

     D.    *Claim Four*

Petitioner claims that he was never advised of his *Miranda* rights prior to interrogation by the police. Petitioner raised this claim for the first time in his fourth Rule 3.850 motion, which the state trial court determined to be facially insufficient as well as successive. (Apps. XXII, XXIII.) As such, this claim appears to be procedurally barred.

<u>However, Respondents failed to raise the procedural bar argument, thus the Court must consider the merits of the claim</u>.

Petitioner alleges that the State used incriminating statements at trial in order to obtain a conviction. However, Petitioner's claim is wholly without merit as no such statements were ever admitted during trial. The evidence of Petitioner's guilt was overwhelming, and the State did not present or rely on any statements made by Petitioner after he was taken into custody. Therefore, this claim is denied.

### IV.  Conclusion

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 7) filed by Brian Thomas Merrill is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 16th day of October, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
pslc 10/16
Counsel of Record
Brian Thomas Merrill